UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| ADELL PANNING, | ) |
| Plaintiff, | ) 3:10-CV-00643-LRH-VPC<br>) <u>ORDER</u> |
| v. | ) |
| EUREKA COUNTY, a political subdivision of the State of Nevada; MICHAEL PAGE, an individual; JERRY LARSON, an individual; and MICHAEL REBALEATI, an individual, | ) |
| Defendants. | ) |

Before the court is Defendants' Motion for Summary Judgment (#25). Plaintiff filed an opposition (#30), and Defendants replied (#31). Plaintiff filed a sur-reply (#33), which Defendants opposed (#34).

### I. Facts and Procedural History

Plaintiff Adell Panning ("Plaintiff") is employed by Defendant Eureka County as Director of the Northern Eureka County Senior Center ("Senior Center"). (Compl. ¶ 2 (#1).) Defendant Eureka County is a governmental entity operating through its Board of County Commissioners. (Id. ¶ 3.) Plaintiff volunteered for the Eureka County's Emergency Medical Service ("EMS") starting in 1994 when she got her Emergency Medical Training ("EMT") certification. (Mot. Summ. J. Ex. 1 at 55 (#25).) She let her certification lapse sometime before April 15, 2010. (Id. at 58.)

On April 15, 2010, Plaintiff attended a Board of County Commissioners' meeting on work time that she was required to attend as part of her duties as Director of the Senior Center. (Compl. ¶ 5 (#1); Mot. Summ. J. Ex. 1 at 30 (#25).) During the meeting, Plaintiff spoke and expressed the

view that the Commissioners should create a larger supply of EMTs in Eureka County by allowing basic EMT classes. (Compl. ¶ 5 (#1).) Plaintiff further stated that she did not have faith in Eureka County's current emergency medical system and that she and her husband had agreed that if an emergency occurred with either one of them, they would call emergency services from the interstate to expedite an emergency response from other counties. (Id.)

On May 13, 2010, Plaintiff was asked to attend a meeting with Defendant County Commissioner Michael Page ("Page") and Defendant Human Resources Analyst Jerry Larson ("Larson"). In the meeting, Plaintiff and Page discussed Plaintiff's comments a month prior regarding Eureka County's EMS. (Id. ¶ 6.) Page expressed his concern and the concern of "several others" that Plaintiff was "running down another department head." (Mot. Summ J. Ex. 7 at 13 (#25).) He urged Plaintiff to keep her public comments in a "framework that works for everybody" and "keep it as positive as you can." (Id.) Page stated that if this sense of "undermining" continued, he would have to "deal with it" and added that he did not want to, that he wanted the situation to "go away." (Id. at 5.) Page indicated that several county employees wanted Plaintiff's "head on a platter" but added that he did not, that he "want[ed] to get it stopped." (Id. at 15.) Page stated and reiterated that this meeting was "not a reprimand." (Id. at 8, 10.)

In the fall of 2009, the Nevada Public Employees' Retirement System (PERS) conducted a random audit of Eureka County, a report of which was submitted to Eureka County in January 2010. (Mot. Summ. J. Ex. 8 at 6 (#25).) As a result of a discovery that a deputy district attorney had been underpaid, Defendant County Auditor Michael Rebaleati ("Rebaleati") decided to audit all at-will employee files to determine whether any had been underpaid. (Id. at 7.) Rebaleati discovered that Plaintiff had been underpaid by approximately $26,000. (Compl. ¶ 11 (#1).)

Between April 20, 2010 and May 14, 2010, Rebaleati contacted Plaintiff to arrange a meeting with her to discuss her back-pay. (Mot. Summ. J. Ex. 1 at 7, 8, 85 (#25).) On May 5, 2010, Rebaleati sent Plaintiff an e-mail to help with the upcoming meeting, specifically addressing Plaintiff's concerns that being awarded this money would place her into a higher income tax bracket. (Mot. Summ. J. Ex. 12 (#25).) Rebaleati notified Plaintiff of an optional deferred compensation plan that would help allay the tax costs. (Id.) Plaintiff met with Rebaleati on May 14, 2010. (Compl. ¶ 11

2

(#1).) Rebaleati testified that he had no knowledge of Plaintiff's comments at the April 15, 2010 meeting or the May 13, 2010 meeting between Plaintiff and Page. (Mot. Summ. J. Ex. 8 at 11 (#25).) Plaintiff chose not to participate in the deferred compensation plan. (Id. at 99.) Plaintiff was awarded the final distribution of her back-pay without interest on June 21, 2010. (Id. Ex. 1 at 101.) This award placed her into a higher income tax bracket. (Compl. ¶ 11 (#1).)

In August of 2010, as part of a county-wide audit of job descriptions, Plaintiff was presented with her job description, which listed her as a Site Supervisor of the Senior Center, a step down from her position as Director. (Id. ¶ 12.) Plaintiff e-mailed Larson about this discrepancy, who responded and subsequently provided her with the correct job description and title. (Compl. ¶ 12 (#1); Mot. Summ. J. Exs. 20, 21 (#25).)

On October 13, 2010, Plaintiff filed this action, alleging that the foregoing actions by Eureka County and its employees constitute a prior restraint and retaliation in violation of her First Amendment right to free speech. Plaintiff seeks an injunction enjoining Defendants to stop their retaliatory pattern of conduct towards her, recognize her right to free speech, retract the prior restraint on her free speech, reimburse her for interest on her back-pay, provide her with back-pay dating further back than 2005, and restore her to her position as if none of the foregoing actions had taken place. (Compl. ¶ 21 (#1).) Defendants now move for summary judgment.

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. Celotex Corp. v.

1  Catrett, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the
2  moving party must make a showing that is "sufficient for the court to hold that no reasonable trier
3  of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259
4  (6th Cir. 1986); see also Idema v. Dreamworks, Inc., 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).
5        To successfully rebut a motion for summary judgment, the non-moving party must point to
6  facts supported by the record which demonstrate a genuine issue of material fact. Reese v. Jefferson
7  Sch. Dist. No. 14J, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might affect the
8  outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
9  (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is
10 not appropriate.  See v. Durang, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material
11 fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for
12 the nonmoving party." Liberty Lobby, 477 U.S. at 248.  The mere existence of a scintilla of evidence
13 in support of the party's position is insufficient to establish a genuine dispute; there must be evidence
14 on which a jury could reasonably find for the party.  Id. at 252.

15 **III. Discussion**

16     **A. Prior Restraint**

17       Plaintiff claims that Larson and Page's May 13, 2010 meeting with Plaintiff amounted to a
18 prior restraint on Plaintiff's First Amendment rights.  (Compl. ¶ 10 (#1).)  "A prior restraint exists
19 when the enjoyment of protected expression is contingent upon the approval of government
20 officials." Baby Tam & Co., Inc. v. City of Las Vegas, 154 F.3d 1097, 1100 (9th Cir. 1998).  Prior
21 restraints, which suppress expression before it occurs, carry a heavy presumption of invalidity. Long
22 Beach Area Peace Network v. City of Long Beach, 574 F.3d 1011, 1023 (9th Cir. 2008).  "This
23 heavy presumption is justified by the fact that prior restraints on speech . . . are the most serious and
24 the least tolerable infringement on First Amendment rights." Grossman v. City of Portland, 33 F.3d
25 1200, 1204 (9th Cir. 1994) (quoting Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1975))
26 (internal quotations omitted).  While a prior restraint "need not actually result in suppression of
27 speech in order to be constitutionally invalid," Long Beach Area Peace Network, 574 F.3d at 1023,
28 it must "[authorize] suppression of speech in advance of its expression." Ward v. Rock Against

1  Racism, 491 U.S. 781, 795 n.5 (1989). Most prior restraint cases involve licensing schemes or
2  permit processes. See, e.g., Kunz v. People of State of New York, 340 U.S. 290, 293 (1951)
3  (involving a permit for religious meetings); Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546,
4  554 (1975) (involving a permit/licensing scheme for municipal theaters). Regulations found invalid
5  as prior restraints have "had this in common: they gave public officials the power to deny use of a
6  forum in advance of actual expression." Conrad, 420 U.S. at 553. There is no administrative
7  decision or permit/licensing scheme involved in this case. Page's comments do not amount to a
8  suppression of Plaintiff's future expression, nor is Plaintiff's expression conditioned on approval of
9  any government official. Plaintiff's comments at the April 15, 2010 meeting did not require
10 approval by a government official, and Plaintiff does not need to go through an approval process for
11 any future expressions. While Page stated that he would have to "deal with it" if he felt another
12 department head was being continually undermined by Plaintiff, he immediately tempered that
13 statement by stating that he did not want to, and that he wanted the situation to "go away." (Mot.
14 Summ. J. Ex. 7 at 5 (#25).) Moreover, Page never forbid Plaintiff from speaking critically or from
15 any form of expression, instead simply urging her to "keep it as positive as you can" in a "framework
16 that works for everybody." (Id. at 13.) Page reminded Plaintiff more than once that the meeting was
17 not a reprimand or any form of discipline. (Id. at 8, 10.) The "head on a platter" comment that
18 Plaintiff makes so much of was attributed by Page to other parties not involved in this case, and Page
19 immediately distanced himself from such comments and their sentiment. (Id. at 15.) The transcript
20 of the May 13, 2010 meeting thus reads less like a series of threatening statements meant to chill any
21 future criticisms from Plaintiff and more like a conversation dealing with Page's concerns about the
22 perceived undermining by Plaintiff of another department head. Page's equivocal comments do not
23 rise to the level of a threat or a "suppression of speech in advance of its expression." Ward, 491 U.S.
24 at 795 n.5. Nothing from the May 13, 2010 meeting constitutes a prior restraint.

25 **B. First Amendment Retaliation**

26 Plaintiff alleges that Defendants retaliated against her for exercising her First Amendment
27 right to free speech. "It is well settled that 'a State cannot condition public employment on a basis
28 that infringes the employee's constitutionally protected interest in freedom of expression.'" *Garcetti*

5

1  *v. Ceballos*, 547 U.S. 410, 413 (2006) (quoting *Connick v. Meyers*, 461 U.S. 138, 142 (1983)).
2  Generally, "[t]o sustain a First Amendment retaliation claim, a public employee must show (1) the
3  employee engaged in constitutionally protected speech, (2) the employer took adverse employment
4  action against the employee, and (3) the employee's speech was a 'substantial or motivating' factor
5  in the adverse action." *Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir.
6  2008) (quoting *Freitag v. Ayers*, 468 F.3d 528, 543 (9th Cir. 2006)).

7  As to the second and third elements of a First Amendment retaliation claim, "an adverse
8  employment action is one that materially affect[s] the compensation, terms, conditions, or privileges
9  of . . . employment." Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008) (quoting
10 Chuang v. University of California Davis, Bd. of Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000))
11 (internal quotations omitted). An adverse employment action "need not be severe and it need not
12 be of a certain kind," but an action may be "so insignificant that it does not deter the exercise of First
13 Amendment rights, and thus does not constitute an adverse employment action within the meaning
14 of the First Amendment retaliation cases." Coszalter v. City of Salem, 320 F.3d 968, 975 (9th Cir.
15 2003).

16 "Depending on the circumstances, even minor acts of retaliation can infringe on an
17 employee's First Amendment rights" so long as a plaintiff can prove that "the actions taken by the
18 defendants were reasonably likely to deter [the plaintiff] from engaging in protected activity under
19 the First Amendment." Id. Accord Anthoine v. North Central Counties Consortium, 605 F.3d 740,
20 750 (9th Cir. 2010). However, "de minimis deprivations of benefits and privileges on account of
21 one's speech do not give rise to a First Amendment claim." Blair v. Bethel School Dist., 6-9 F.3d
22 540, 544 (9th Cir. 2010). The actions taken by defendants must rise to a level "that would stifle
23 someone from speaking out." Id. Furthermore, a plaintiff must "adequately [tie] the adverse
24 employment action to her protected activity." Bleeker v. Vilsack, 468 Fed. Appx. 731, 732 (9th Cir.
25 2012).

26 As discussed above, Plaintiff's May 13, 2010 meeting with Page and Larson does not rise
27 to a level that substantially threatens Plaintiff against any future expression. See supra Part III.A.
28 Nor was the meeting itself any kind of discipline or reprimand, as repeatedly stated by Page in the

6

1   meeting. (Mot. Summ J. Ex. 7 at 8, 10 (#25).) It is difficult for this court to see how the meeting
2   in any way "materially affect[ed] the compensation, terms, conditions, or privileges of . . .
3   employment." Davis, 520 F.3d at 1089. The Ninth Circuit has held that simply being "bad-mouthed
4   and verbally threatened," a stronger action than Page's inconclusive concern-voicing and equivocal
5   comments, is insufficient to establish an adverse employment action. Nunez v. City of Los Angeles,
6   147 F.3d 867, 875 (9th Cir. 1998). "It would be the height of irony, indeed, if mere speech, in
7   response to speech, could constitute a First Amendment violation." Id.

8   Similarly, Rebaleati's interactions with Plaintiff regarding her back-pay do not amount to an
9   adverse employment action, nor does her final award of non-deferred back-pay. While Plaintiff
10  claims that she is entitled to further back-pay and interest on all of the payments owed to her, she
11  provides no evidentiary basis for those statements, creating no genuine issue for the trier of fact.[1]
12  Her argument that Eureka County retaliated against her by paying her the money that was owed to
13  her because it placed her in a higher tax bracket is unconvincing. Rebaleati offered and encouraged
14  Plaintiff to take a deferred compensation scheme for her back-pay that would have avoided some of
15  the increased tax burden, but Plaintiff voluntarily refused this mode of payment. (Mot. Summ. J.
16  Ex. 1 at 99; Ex. 12 (#25).) Moreover, Plaintiff has failed to provide any evidence that Rebaleati or
17  anyone else involved in distributing Plaintiff's back-pay had any knowledge of Plaintiff's statements
18  at the April 15, 2010 meeting, and Rebaleati has testified that he had no knowledge of Plaintiff's
19  April 15, 2010 statements or her subsequent meeting with Page and Larson on May 13, 2010. (Id.
20  Ex. 8 at 11.)

21  Plaintiff's argument that Defendants retaliated against her by providing her with an outdated
22  job description and title is also unpersuasive. Again, Plaintiff's claim fails for a complete lack of
23  evidence. Plaintiff has failed to show that the outdated job description, which was quickly rectified
24  upon request, was anything more than a clerical error. Plaintiff has failed to establish even the
25  slightest causal link between the provision of the outdated job description and her April 15, 2010
26  comments. Quite simply, Plaintiff has failed to prove the existence of a material factual dispute with

---

[1] Plaintiff's complaint includes no independent claim for back-pay or interest.

7

regard to her outdated job description.

Plaintiff has not provided sufficient evidence of any adverse employment action by Defendants, an essential element of all First Amendment retaliation claims. Summary judgment for Defendants is therefore appropriate.

## IV. Conclusion

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (#25) is GRANTED.

The Clerk of Court shall enter judgment accordingly.

IT IS SO ORDERED.

DATED this 10th day of August, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE